# UNITED STATES DISTRICT COURT

SOUTHERN _____ District of _NEW YORK_

GEORGE J. CAPENEGRO,

                 Plaintiff(s),

- against -

DEWBERRY & DAVIS LLC., LONG TERM
DISABILITY PLAN, DEWBERRY & DAVIS
LLC., as Plan Administrator, and SUN LIFE
ASSURANCE COMPANY OF CANADA,

                 Defendant(s).

## SUMMONS IN A CIVIL CASE

CASE NUMBER: **05 CV 4814**

**JUDGE CHIN**

TO: (name and address of defendants)

SEE ATTACHED SHEET

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY,
(name and address)

          **BINDER & BINDER, P.C.**
      **2805 Veterans Memorial Highway**
               **Suite 20**
     **Ronkonkoma, New York 11779**

an answer to the complaint which is herewith served upon you, within __20__ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint. You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Jessica Depas_

(BY) DEPUTY CLERK

MAY 19 2005

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GEORGE J. CAPANEGRO,                     :
                                         :
                    Plaintiff,           :        Civil
                                         :        Action No.:
         – against –                     :
                                         :        **COMPLAINT**
DEWBERRY & DAVIS LLC LONG-TERM           :
DISABILITY PLAN, DEWBERRY & DAVIS        :
LLC., AS PLAN ADMINISTRATOR, AND SUN LIFE :
ASSURANCE COMPANY OF CANADA ,            :
                                         :
                                         :
                    Defendants.          :
-------------------------------------------------------------------X

Plaintiff, George J. Capanegro, by his attorneys, BINDER & BINDER, P.C., for his Complaint against the Defendants, Dewberry & Davis LLC Long-Term Disability Plan, (the "LTD Plan") Dewberry & Davis LLC, as Plan Administrator (the "Plan Administrator"), and Sun Life Assurance Company of Canada ("Sun"), hereby alleges as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.      Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001, *et seq.*), the long-term disability plan at issue in this litigation must contain provisions for the administrative or internal appeal of denial of benefits.

3.      Plaintiff has exhausted all administrative avenues of appeal and has received a final denial, and therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

4.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

## NATURE OF ACTION

5.     This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan and a group long-term disability insurance policy.

6.     Defendant, the LTD Plan, provides group long-term disability benefits, sponsored and funded by Dewberry & Davis LLC ("Dewberry").  Defendant, the LTD Plan, is an employee benefit welfare plan established and maintained by an employer for the benefit of its employees, and thus, ERISA applies to this action.  Those benefits were effective at all times relevant hereto.

7.     Claims for benefits are administered and paid through a Group Long-Term Disability Insurance Policy, No. 26347-GD (the "Group Policy"), issued by Defendant, Sun.

## STANDARD OF REVIEW

8.     The Summary Plan Description ("SPD") applicable to this action does not contain any grant of discretionary authority to the LTD Plan, the Plan Administrator or Sun.

9.     Therefore, this court must review the denial of benefits under a *de novo* standard of review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

10.    The Group Policy was issued on November 1, 1995, well after the U.S. Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), which provided that a denial of benefits under an employee benefit welfare plan is reviewed under the *de novo* standard, absent a clear grant of discretion.  Sun has made all of the claims decisions in this matter.

11.    Moreover, the Group Policy was last amended prior to Mr. Capanegro's disability onset on April 8, 2002, thirteen (13) years after the U.S. Supreme Court decided Firestone Tire & Rubber Co. v. Bruch, and the LTD Plan documents still lack a clear grant of discretion, thus mandating a *de novo* review by this Court.

## THE PARTIES

12.    Plaintiff was born on March 10, 1924, is presently 80 years old and is a resident of East Meadow, New York.

13.    Defendant, the LTD Plan, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action. Upon information and belief, the LTD Plan is sponsored and funded by Dewberry.

14.    Dewberry is also the named Plan Administrator for the LTD Plan, and is a foreign limited liability company. Its address for service of process in New York is CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

15.    Defendant, Sun, is a Canadian corporation and insurance company licensed to conduct the business of insurance in New York State. Sun's United States corporate headquarters is located at One Sun Life Executive Park, Wellesley Hills, Massachusetts 02481.

## STATEMENT OF FACTS

Plaintiff's Occupation:

16.    Mr. Capanegro began working for Dewberry in May, 2000, and was employed there through August 16, 2002. Mr. Capenegro was actively employed at Dewberry until August 15, 2002- the date his disability rendered him "unable to perform   all of the material and substantial duties of his own occupation."

17.    At the time of the onset of his disability, Mr. Capanegro was employed by Dewberry as a Resident Engineer.

18.    Plaintiff's occupation is listed in the Dictionary of Occupational Titles as 005.061-014 under the title "Civil Engineer." Plaintiff was required to perform various tasks endemic to his profession including, but not limited to: analyzing reports, drawings and blueprints; planning and designing large, commercial skyscraper construction projects; and calculating the cost and determining the  feasibility of a project based on analysis of collected data. Mr. Capanegro's occupation also required him to prepare or direct preparation and modification of reports, specifications, plans, construction schedules, environmental impact studies and designs for projects, as well as all other tasks necessary to carry out his primary responsibility -- the overseeing of the

planning, design and construction of various civil engineering projects in a competent and professional manner.  To accomplish these tasks, Mr. Capanegro was required to personally visit, inspect and supervise the actual construction sites.

19.     Plaintiff's occupation would be classified as a "light work" occupation by the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. 1991), *i.e.*, requiring near visual acuity frequently, (exists from 1/3 to 2/3 of the time), and far visual acuity and depth perception occasionally (exists up to 1/3 of the time, and walking or standing to a significant degree.

20.     Plaintiff's pre-disability income at the time he became disabled was approximately $80,280 per year.

21.     For all relevant periods prior to August 15, 2002, Plaintiff, together with other regular employees of Dewberry, was a covered participant under the Defendant, LTD Plan.

The Terms of the LTD Plan:

22.     The LTD Plan provides for payment of monthly income benefits to participants of the LTD Plan who become disabled.

23.     The monthly benefit is determined based on a set percentage (60 %) of pre-disability eligible compensation, capped at $10,000.00 per month, and reduced by other income benefits as those terms are identified in the LTD Plan.

24.     According to the SPD, other income benefits explicitly include Social Security Retirement benefits and New York State Unemployment Compensation

25.     The LTD Plan provides for a twelve month maximum benefit period for those participants who are over 69 years of age at the time their disability commences

26. After deducting the other income benefits Plaintiff received, the total amount in controversy in this action is $20,823.00 for the entire 12.month maximum benefit period applicable to this claim

27.     In the event of total disability, benefits under the LTD Plan commence after a 90-day Elimination Period.  In the instant matter, Plaintiff became entitled to benefits on November 13, 2002, *i.e.*, after the expiration of the 90-day Elimination Period.

---

COMPLAINT

28.    The LTD Plan contains the following relevant definition of "disabled":

Total Disability or Totally Disabled means during the Elimination Period and the next 36 months of Total Disability, the Employee, because of Injury or Sickness, is unable to perform **all** of the material and substantial duties of his own occupation. ...

The LTD Plan at Page No. 14 (emphasis added).

29.    The LTD Plan also contains the following provision for the cessation of coverage under the LTD Plan:

When does my insurance cease?

Your insurance ceases on the earliest of :

> - the date the Group Policy terminates;
> - the date you are no longer in an Eligible Class;
> - the date your class is no longer included for insurance;
> - the last day any required premium has been paid for your insurance;
> - the date you retire;
> - the date you request in writing to terminate your insurance
> - the date you enter active duty in any armed service during a time of war (declared or undeclared);
> - the date your employment terminates;
> - the date you cease to be Actively at Work.

The LTD Plan at Page No. 8.

30.    Therefore, Plaintiff's coverage continued under the LTD Plan at least until 11:59:59 p.m. on August 15, 2002.

Plaintiff's Disability:

31.    On January 22, 2001, Mr. Capanegro was treated by his ophthalmologist, Mark Fleckner for a retinal hemorrhage in his left eye and complaints of decreased vision. He was diagnosed with Exudative Macular Degeneration in the left eye with an associated Retinal Pigment Epithelial Detachment and Occult Sub Oveal Chorodial Neovascularization.

32.    Mr. Capanegro underwent a series of laser treatments for those multiple medical conditions, and Dr. Fleckner noted only a slight improvement in his left eye on March 9, 2001. The treatments ultimately proved ineffective and his condition regressed.

33.    Dr. Fleckner noted in his April 25, 2004, Attending Physician Statement that Mr. Capanegro was unable to see print and other details and was unable to drive. He opined that these

limitations became applicable on or around January 22, 2001, approximately 18 months prior to Mr. Capanegro's last day of work.

34.     Mr. Capanegro's vision continued to deteriorate rapidly and took a dramatic turn for the worse in December 2001.

35.     On April 8, 2002, Mr. Capanegro was examined by another board certified ophthalmologist, James Maisel, M.D., who noted that Plaintiff had a visual acuity finding of 20/400 in his left eye and 20/200 in his left eye, which meets the Social Security Administration's statutory definition of blindness.

36.     Dr. Maisel diagnosed Plaintiff with Bilateral Exudative Macular Degeneration and noted that Plaintiff's left eye had irreversible lost central acuity and that the right eye had a grave risk of also developing further loss of central acuity. Dr. Maisel recommended a series of photodynamic laser treatments, which did not improve or reverse Mr. Capanegro's progressive, degenerative condition but instead resulted in recurrent retinal hemorrhaging.

37.     In a letter dated March 11, 2003, Dr. Maisel noted that Plaintiff is severely visually impaired in both eyes and is unable to drive or read printed material due to the loss of his central visual acuity. He further noted that Mr. Capanegro had been legally blind since he was first evaluated in April 2002, and that documentation had been submitted to the New York State Department of the Visually Disabled.

38.     In an Attending Physician Statement submitted to Defendant Sun, on April 27, 2003, Dr. Maisel noted that Mr. Capanegro was legally blind, could not see to perform activities and was incapable of working. The doctor listed his diagnosis of Plaintiff's condition as Bilateral Exudative Macular Degeneration and stated that these limitations first became applicable on April 8, 2002.

39.     On April 9, 2002, Mr. Capanegro was examined by yet another board certified ophthalmologist, Joseph Bacotti, M.D.,who noted that Plaintiff's vision was failing and subsequently diagnosed Plaintiff with Macular Degeneration, Cataracts, Choreoretinal Scarring and Suspected Glaucoma.

40.     Dr. Bacotti provided Sun with another Attending Physician Statement, dated April 25, 2003, which noted that Plaintiff could not drive and was not capable of working within the

limitations presented by his disability. The doctor noted that Mr. Capanegro's symptoms first appeared in December 2001, and that Plaintiff was disabled from April 8, 2002.

41.     Mr. Capanegro's severe, irreversible Exudative Bilateral Macular Degeneration has left him legally blind,  and, consequently, totally disabled and unable to work, as these terms are defined in the LTD Plan's plan documents.

42.     Mr. Capanegro continued to work for his employer until August15, 2002, despite being unable to perform all the substantial and material duties of his own occupation, thus satisfying the LTD Plan definition of total disability. Mr. Capanegro's disability has existed from at least April 8, 2002, and possibly as far back as January 2001, due to the above stated debilitating symptoms and conditions.

43.     Mr. Capanegro's treating doctors have continued to monitor his permanent, deteriorating, degenerative condition and have, documented additional symptoms since January 2001.

44.     Mr. Capanegro  continues to experience debilitating symptoms as a result of his illness and has received, and continues to receive, medical treatment for his numerous medical conditions from his treating doctors.

45.     Mr. Capanegro's disability, as defined by the Summary Plan Description, continues to date.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR
### LONG-TERM DISABILITY BENEFITS

46.     With regard to Plaintiff's claim for benefits under the LTD Plan, Mr. Capanegro worked for his employer through August 15, 2002, but was unable to perform all the material and substantial duties of his own occupation since April 8, 2002, and possibly as early as January 2001.

47.     On or about June 2, 2003, Marion Decker, the Human resources director at Dewberry, completed an Employer Long Term Disability Claim Statement on behalf of Defendant, Sun. Ms. Decker indicated that the major tasks of Mr. Capanegro's occupation were writing and driving.

COMPLAINT

48.     Plaintiff was unable to perform all of the material and substantial duties of his occupation, since well before April 8, 2002, because he was legally blind and unable to write or drive, which according to the Human Resources Director of Plaintiff's employer, were major tasks of his occupation.  Therefore, he was rendered totally disabled within the definition of the LTD Plan's SPD: "continuously unable to perform **all** of the material and substantial duties of his own occupation.

49.     Since Mr. Capanegro was unable to perform all of the material and substantial duties of his own occupation since before April 8, 2002, he must, according to the LTD Plan's definition of total disability, be considered totally disabled no later than April 8, 2002.

50.     Plaintiff continues to be so disabled.

51.     Defendant, Sun, denied Plaintiff's claim in part, because Plaintiff continued to work full time, and thus, allegedly could not be disabled until his employment with Dewberry ended on August 15, 2002.

52.     Although Plaintiff's employment with Dewberry, and coverage under the LTD Plan, continued through August 16, 2002, he was rendered completely unable to work in any capacity as of August 15, 2002.

53.     In compliance with the terms and conditions of the LTD Plan, Plaintiff timely submitted his claim form, together with three Attending Physicians' statements.  The terms of the LTD Plan provide that benefits were to commence, at the latest, on November 15, 2002, *i.e.* after the expiration of the 90-day Elimination Period.

54.     On or about May 22, 2003, an "Employee Disability Claim Statement," was filled out and returned to Sun.

55.     Based on the records of Mr. Capanegro's treating physicians, it is clear that Mr. Capanegro meets the statutory definition of blindness set forth by the Social Security Administration ("SSA").  The SSA defines blindness as central visual acuity of 20/200 or worse in the better eye with the use of correcting lens. 20 CFR § 404. 1581.

56.     Although Mr. Capanegro did not apply for Social Security disability benefits due to his advanced age, Plaintiff would otherwise qualify for SSD, in that he meets the Social Security

**COMPLAINT**

Administration's definition of disability under the Social Security Act, i.e., unable to engage in any substantial gainful activity (*see*, 42 U.S.C. §416(i) – Definition of "Disability" in the Social Security Act).

57.    The definition of disability applied by the Social Security Administration is substantially more restrictive than the definition of disability applicable to Plaintiff's claim under the LTD Plan.

58.    Sun denied Mr. Capanegro's claim by letter dated June 6, 2003.

59.    Mr. Capanegro appealed Sun's adverse decision by letter dated June 26, 2003. His appeal letter outlined his condition and stated that his blindness left him unable to do all the substantial and material duties of his own occupation.

60.    Sun denied Mr. Capanegro's appeal by letter dated March 9, 2004, wrongfully alleging that he did not meet the LTD Plan's definition of total disability. Further, Sun incorrectly asserted that the documentation submitted was insufficient for Sun to conclude that Mr. Capanegro was not capable of carrying on the duties of a resident civil engineer up to and including the date the job assignment ended.

61.    Sun's determination was based solely upon its own internal document review and its flawed vocational analysis. Sun has never had Plaintiff examined by any of its "Independent" Physicians, nor has a representative of the insurance carrier even met the Plaintiff in person.

62.    In essence, Sun disregarded the findings and opinions of Plaintiff's treating physicians in favor of its own employees, none of whom ever had any direct contact with Plaintiff.

63.    Sun's review of this claim has been neither full nor fair, and instead, has been driven by its own pecuniary interest in denying those benefits which it would otherwise have to pay out of its own assets.

64.    Sun also denied Plaintiff's appeal on the grounds that Mr. Capanegro does not qualify for benefits because he last worked on the date his employment ended.

65.    However, Plaintiff would still be entitled to benefits under those circumstances because, according to the terms of the LTD Plan, the insurance is effective through the date that Mr. Capanegro's employment terminated, i.e., August 16, 2002.

**COMPLAINT**

66.    Mr. Capanegro's employment and his entitlement to coverage under the terms and conditions of the LTD plan did not terminate simultaneously.

67.    Moreover, Mr. Capanegro was unable to work after his employment ended and thus was disabled under the terms and conditions of the LTD policy at the moment his employment ended.  Therefore, since he was covered at the time of the onset of his disability, he is entitled to benefits under the LTD plan.

68.    The Plan Administrator delegated its decision-making power to Sun, but failed in its duty to adequately monitor and correct the carrier's bad faith handling of this claim.

69.    Sun, as both the decision-maker and the party responsible for paying benefits out of its own funds, was operating under a conflict of interest which had a material and substantial influence on its decision to deny Plaintiff's claim.  Specifically, Sun allowed its own pecuniary interests to control its handling and decision-making on this claim, in that it sought to avoid liability for the 12 months of benefits it would have to pay Plaintiff.

70.    In seeking to further its own pecuniary interests, Sun has denied Plaintiff his right to a full and fair review of the denial of his claim, as required by ERISA.

71.    Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the plan.

72.    The Plan Administrator has failed to make any decisions concerning Plaintiff's claim for disability benefits.  Rather, the long-term disability claim decisions rendered in the instant action have been made by Sun, which has a pecuniary interest in denying claims.

73.    Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language.

74.    Sun's decisions were not supported by the medical evidence and moreover, did not properly apply the language of the LTD Plan.

75.    Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to monthly Long-Term Disability, with an onset date of August 15,

2002, and benefits commencing on November 13, 2002 and continuing to the present, under the terms of the LTD Plan and the Group Policy.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.     That the Court declare and then determine that under the terms of the LTD Plan that the Plaintiff's disability began on or about April 8, 2002, and that he continues to be disabled within the LTD Plan's provisions;

b.     That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants, the LTD Plan, the Plan Administrator and Sun, to compensate Plaintiff for his disability in accordance with the terms of the LTD Plan;

c.     That the Court award Plaintiff his attorneys' fees pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(g); and

d.     That Plaintiff receive such other necessary, proper and equitable relief, including, interest, costs and disbursements, as to which he may be entitled.

Dated: April 14, 2005
         Ronkonkoma, New York

                                        BINDER & BINDER, P.C.


                          By:     _____
                                  Harry J. Binder (HJB 5450)
                                  Attorneys for Plaintiff
                                  2805 Veterans Memorial Highway
                                  Suite 20
                                  Ronkonkoma, New York  11779-7682
                                  Telephone:  (631) 361-6699
                                  Facsimile:  (631) 607-2569

---